# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**BRENDA CHRISTIE and**
**SOPHIA SUTTON,**

       **Plaintiffs,**

**v.**                                      **Case No. 4:10cv322/MCR/WCS**

**STATE OF FLORIDA, DEPARTMENT**
**OF EDUCATION,**

       **Defendant.**

_____/

## ORDER

The plaintiffs, Brenda Christie and Sophia Sutton, filed this lawsuit against the defendant, the Florida Department of Education ("DOE"), asserting claims for race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq*., and 42 U.S.C. § 1981 ("§ 1981"). Pending before the court is the DOE's motion for summary judgment (doc. 25), which the plaintiffs oppose. Having considered the DOE's motion and the plaintiffs' response, the court finds there are genuine issues of material fact precluding summary judgment.

## BACKGROUND[1]

The plaintiffs, both of whom are black females, were long-time employees of the DOE.[2] At the time they were terminated, both plaintiffs held the position of Program Specialist II in the Guaranty Processing Section of DOE's Office of Student Financial

---

[1] For the limited purposes of this summary judgment proceeding, the court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1265 (11th Cir. 2008) (internal marks omitted). The court is mindful, however, that "what is considered to be the 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial . . . ." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

[2] Sutton was first employed by the DOE in 1982, and Christie was first employed in 1986.

Assistance ("OSFA").[3]  Although the plaintiffs spent the bulk of their time as Program Specialists working in the loan consolidation unit, at the time they were terminated, they were assigned to the loan maintenance unit.  Gloria Gilliam, a Program Specialist III, was their immediate supervisor.[4]  From approximately 2002 through 2005, Elaine Fletcher, a white female, worked with the plaintiffs in the loan consolidation unit, originally as a staff assistant and ultimately as a Program Specialist II.[5]

Unlike other bureaus within the DOE, OSFA is self-funded based on revenue it generates from the collection of fees.  Beginning in 2005 and continuing through to the 2008-2009 fiscal year, changes in the law and the downturn in the nation's economy resulted in a drastic reduction in the number of loans available for consolidation.  For example, during the 2004-2005 fiscal year, OSFA processed 39,251 loan consolidations, with a value of $757,831,587; during the 2007-2008 fiscal year, however, it processed only 2,489 loans, with a value of $27,585,383.  There were no loan consolidations processed the following year.  According to the DOE, Fletcher promptly recognized the downward trend in loan consolidations and sought out different and additional work duties.[6]  Although Fletcher remained classified the same as the plaintiffs, the DOE contends that she was permanently reassigned to the loan originations unit in 2005.[7]  By the fall of 2007, there

---

[3] During the plaintiffs' employment with the DOE, the Guaranty Processing section was comprised of three units – loan origination, loan consolidation, and loan maintenance.

[4] Gilliam also is a black female.  Prior to February 2008, Gilliam reported to Tom Mims, the director of Guaranty Processing.  In February 2008, Marlene Norrell replaced Mims and became Gilliam's supervisor.

[5] Fletcher was hired in 2000 to work in the Bright Future Call Center.

[6] According to the plaintiffs, Fletcher recognized the downward trend only because she was so advised by Mims.  The plaintiffs also maintain that they, too, sought out additional duties.

[7] The exact date Fletcher was reassigned is not clear.  Moreover, while the DOE claims that Fletcher was permanently reassigned, there is evidence that contradicts that fact.  Indeed, the DOE acknowledges that, "on paper," Fletcher's "position officially remained that of a Program Specialist II in consolidations."  The court also notes that the plaintiffs have alleged that they and Fletcher continued to process loan consolidations after their reassignments and were still doing so at the time the plaintiffs were terminated.  Christie testified to that fact in an affidavit the plaintiffs submitted in support of their response to the DOE's motion for summary judgment.  The DOE has filed a motion to strike that portion of Christie's affidavit, arguing that Christie contradicted that statement in her deposition testimony and that other evidence in the record makes it clear that neither Fletcher nor the plaintiffs were processing loan consolidations at the time the plaintiffs were

was no consolidation work to be performed; Janie Westberry, the Bureau Chief of OSFA, thus instructed the current unit director, Marlene Norrell, to find temporary projects and assignments for the plaintiffs in hopes that the market would soon recover and they would be able to resume loan consolidation work and retain their jobs.

In November 2008, Levis Hughes replaced Westberry as the Bureau Chief of OSFA. Linda Champion, the DOE's Deputy Commissioner responsible for the Division of Finance and Operations, hired Hughes and instructed him to find ways to cut OSFA's overall budget.  Hughes testified that he reviewed the annual budget and organizational chart and determined that a number of positions in OSFA needed to be eliminated, including those in the loan consolidation unit.  Hughes confirmed with Norrell that OSFA was no longer consolidating loans and that Westberry had arranged for the plaintiffs to be assigned to different, temporary tasks.  Based on that information, Hughes concluded that it made no sense from a business or financial perspective to retain the plaintiffs; Hughes thus developed a phased layoff plan pursuant to which the plaintiffs' would be terminated, effective April 30, 2009, in connection with the elimination of the loan consolidation unit.[8] Champion approved the plan, and the plaintiffs were advised of the layoffs by letter dated March 2, 2009.[9]

The plaintiffs later filed this lawsuit, claiming they were laid off because of their race. In support of their claims, the plaintiffs point to the fact that Fletcher retained her position despite the fact that she performed similar work and had been employed by the DOE far less time than they had.  The plaintiffs do not attribute racial animus to Hughes or Champion; rather, they contend that Gilliam and Norrell discriminated against them.

---

terminated.  In light of its findings set forth in this order, the court finds it unnecessary to consider the portion of Christie's affidavit at issue in the DOE's motion and thus denies the DOE's motion (doc. 36) as moot.

[8] Twelve additional employees were laid off effective June 30, 2009, including one Asian male, one white male, one Hispanic male, one black male, three white females, four black females, and one Hispanic female, and more employees have been laid off since then.

[9] At the time the plaintiffs were laid off, there were no job vacancies within OSFA at a level comparable to the positions the plaintiffs held, although there was one lower level position in Norrell's unit as Accountant II.  The plaintiffs claim that they expressed interest in the position but neither of them was interviewed.  Instead, Norrell hired Gilliam's cousin, Meltonia Dickey, who also is a black female.

**DISCUSSION**

A.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party.  *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact."  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995).  When assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party.  *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993).  A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment.  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).  Moreover, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'"  *Vega v. Invsco Group, Ltd.*, 432 Fed. Appx. 867, 869-70 (11th Cir. 2011).

B.    The Plaintiffs' Claims

Both Title VII and § 1981 prohibit an employer from discriminating against an employee with respect to compensation, terms, conditions, or privileges of employment because of the employee's race.[10]  *See* 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 1981. Because the plaintiffs rely solely on circumstantial evidence in support of their claims, the court considers their claims according to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).  *See Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006).   "The first step of the *McDonnell Douglas* framework requires the plaintiff to make out a case sufficient to withstand a motion for summary judgment (or a motion for judgment as a matter of law) – i.e., a 'prima facie case.'"  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 (11th Cir. 2011).  In order to do so, each plaintiff must establish the following four elements: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was treated less favorably than similarly situated employees outside the protected class; and (4) she was qualified for the job.  *See Blue v. Dunn Const. Co., Inc.*, No. 10-14345, 2011 WL 5903535, at *3 (11th Cir. Nov. 23, 2011).[11]  If the plaintiff establishes a *prima facie* case of discrimination, a rebuttable presumption arises that the employer unlawfully discriminated against her and the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the employment decision.  *Smith*, 644 F.3d at 1325.  "If the employer meets its burden of production, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted and thus disappears."[12]

---

[10] As the Eleventh Circuit has noted, "[b]oth § 1981 and Title VII are subject to the same standards of proof and employ the same analytical framework."  *Vega*, 432 Fed. Appx. at 870 (internal marks omitted). As a result, the court will address only the plaintiffs' Title VII claims with the understanding that the same analysis and findings apply to their § 1981 claims as well.

[11] While unpublished opinions are not considered binding, they may be considered as persuasive authority.  *See* 11th Cir. R. 36-2; *see also United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000).

[12] A trier of fact does not have to believe the employer's proffered reason in order to find that the employer has met its burden, "[f]or the burden-of-production determination necessarily *precedes* the credibility-assessment stage."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).  Nor is an employer

*Smith*, 644 F.3d at 1325-26.  "Once the presumption of discrimination is rebutted, the inquiry proceeds to a new level of specificity, whereby the plaintiff must show the employer's proffered reason to be a pretext for unlawful discrimination."  *Id.* at 1326 (internal marks omitted).  "It is at this stage that the plaintiff's burden . . . merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination."  *Id.* (internal marks omitted).  A plaintiff can do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Brooks*, 446 F.3d at 1163 (internal marks omitted).  With respect to the latter, "the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  *Cooper*, 390 F.3d at 725 (internal marks omitted).  "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004).  However, merely "[q]uarreling with that reason is not sufficient."  *Id.*

     The DOE does not dispute that the plaintiffs are members of a protected class, that they suffered adverse employment actions, or that they were qualified for the jobs they held.  Rather, the DOE argues that the plaintiffs have failed to identify a similarly situated employee outside their protected class who was treated more favorably than they were. In an effort to do so, the plaintiffs points to Fletcher, who retained her job despite the fact that she had less seniority than they did.  As the Eleventh Circuit recently reiterated, "[t]o be an adequate comparator, the preferentially treated individual from outside plaintiff's protected class must be similarly situated to the plaintiff in all relevant respects.  *Brown v. Sch. Bd. of Orange Cnty., Fla.*, No. 11-10819, 2012 WL 613758, at *2 (11th Cir. Feb. 28,

---

required to persuade the court its reason is "legitimate."  *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006).  The employer is required only to present evidence which, taken as true, permits a reasonable fact finder to conclude there was a legitimate nondiscriminatory reason for the employment action.  *St. Mary's Honor Ctr.*, 509 U.S. at 509; *Cooper*, 390 F.3d at 725.

2012).  In other words, "[t]he comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer."  *Wilson*, 376 F.3d at 1091.  The employees need not hold the same job titles, however.  *See Brown*, 2012 WL 613758, at *2.

The DOE argues that Fletcher is not similarly situated to the plaintiffs because she took the initiative to seek other job assignments as soon as she realized that loan consolidations were waning and ultimately was reassigned to another unit in which she performed different work than the plaintiffs.  As set forth above, the fact that Fletcher performed different tasks than the plaintiffs does not render her dissimilarly situated for purposes of Title VII.  Moreover, the plaintiffs maintain that they, too, sought out additional tasks when they realized that loan consolidations were waning.  Even more notably, at the time Hughes made the decision to eliminate the consolidations unit and each of the positions therein, Fletcher was still officially assigned to that unit.  Based on the record in this case, the court cannot conclude, as a matter of law, that the plaintiffs have failed to identify a similarly situated employee who was treated more favorably than they were.  *See Eggleston v. Bieluch*, 203 Fed. Appx. 257, 264 (11th Cir. 2006) (noting that "determining whether individuals are similarly situated is generally a factual issue for the jury").

Having found a genuine issue of material fact with regard to the plaintiff's *prima facie* case, the court must now consider whether the DOE has articulated a legitimate nondiscriminatory reason for the plaintiffs' terminations.  The court easily finds that it has.  Indeed, the DOE insists that it terminated the plaintiffs in connection with a budget reduction and elimination of the loan consolidation unit.  Accordingly, to avoid summary judgment, the plaintiffs must demonstrate that the DOE's legitimate nondiscriminatory reason is a pretext for unlawful discrimination.  To that end, the plaintiffs argue that the DOE's proffered reason for their terminations cannot be substantiated because, at the time they were terminated, they were working in the loan maintenance unit and not the loan consolidation unit.  Specifically, the plaintiffs maintain that they were reassigned to the loan maintenance unit in the fall of 2007 and, in support of their assertion in that regard, the plaintiffs attached as exhibits to their affidavits documents titled "Position Description,"

which suggest that the plaintiffs' duties and/or positions in fact changed in late 2007.  The DOE does not dispute that the plaintiffs were performing work outside the loan consolidations unit at the time they were terminated.  Nevertheless, Hughes testified that he terminated the plaintiffs because their positions in the loan consolidation unit were being eliminated.  The court also notes that Fletcher, too, was officially assigned to the loan consolidation unit at the time the plaintiffs were terminated; as a result, if Hughes' intention was to eliminate each employee assigned to that unit, he presumably would have terminated Fletcher as well.  The court thus finds that a reasonable jury could conclude that the DOE's proffered reason for their terminations was pretextual; in other words, there is a question of fact as to whether the plaintiffs actually were terminated as part of a reduction in force, as the DOE alleges.  The DOE's motion for summary judgment therefore should be denied.

**CONCLUSION**

Accordingly, it is hereby **ORDERED** that the defendant's motion for summary judgment (doc. 25) is **DENIED**.  The trial of this matter will be set by separate order.

**DONE AND ORDERED** this 30th day of March, 2012.

s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**